UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| HECTOR AVILA,<br><br>              Petitioner,<br><br>v.<br><br>BRENT REINKE and LAWRENCE WASDEN,<br><br>              Respondents. | Case No. 1:11-cv-00474-EJL<br><br>**MEMORANDUM DECISION AND ORDER** |

      Pending before the Court is Respondents' Motion for Summary Dismissal (Dkt. 21.) Respondents contend that Petitioner Hector Avila filed his Petition for Writ of Habeas Corpus beyond the statute of limitations expiration date and that the Petition should be dismissed with prejudice. (Dkt. 21.) Petitioner has filed a Response, and Respondents have filed a Reply. (Dkts 27, 28.)

      Having fully reviewed the record, including the state court record, the Court finds that the parties have adequately presented the facts and legal arguments in the briefs and record and that the decisional process would not be significantly aided by oral argument. Therefore, the Court will decide this matter on the written motions, briefs and record without oral argument. D. Idaho L. Civ. R. 7.1(d). Accordingly, the Court enters the following Order.

**MEMORANDUM DECISION AND ORDER - 1**

# REVIEW OF MOTION FOR SUMMARY DISMISSAL

**1.     Procedural History**

The procedural history relevant to the statute of limitations defense is as follows. Petitioner was convicted by jury of attempted first degree murder and unlawful possession of a firearm. (State's Lodging A-1, p. 146-49.) On direct appeal, Petitioner brought one claim, that his constitutional right to a speedy trial was violated. (State's Lodging B-1.) The Idaho Court of Appeals affirmed the conviction, and the Idaho Supreme Court denied Petitioner's petition for review on March 13, 2007. (State's Lodgings B-3 to B-7.)

With the aid of counsel, Petitioner filed a state post-conviction relief petition on March 7, 2008, bringing a claim of ineffective assistance of trial counsel. (State's Lodgings C-1, C-3.) The state district court summarily dismissed the petition, and judgment was entered on July 26, 2010. (State's Lodgings C-6, C-7.)

Petitioner did not file a notice of appeal within the 42-day deadline, but filed one on October 7, 2010, over 60 days after the state district court issued its order dismissing the case. (State's Lodging D-1.) The late filing was due to an oversight in his attorney's office, caused by a miscommunication among office staff. As a result of the late filing, the Idaho Supreme Court dismissed Petitioner's appeal on November 17, 2010, and issued its remittitur on December 10, 2010. (State's Lodgings D-3, D-4.)

Petitioner filed his federal Petition for Writ of Habeas Corpus in this action on October 7, 2011. (Dkt. 1.) Because Petitioner filed a successive post-conviction action in

**MEMORANDUM DECISION AND ORDER - 2**

state court on April 16, 2012 (State's Lodging E-1) during the pendency of this action, this federal matter was stayed pending completion of additional state court proceedings. (Dkt. 11.)

Petitioner's successive post-conviction relief petition, asserting that counsel in his first post-conviction action was ineffective for failing to file a notice of appeal from the order of dismissal in that case, was dismissed as untimely. (State's Lodging E-6 to E-8.) Petitioner did not file a notice of appeal.

This Court re-opened the federal habeas corpus matter when it received notice that Petitioner's state court proceedings had concluded. (Dkt. 13.) Petitioner filed the Amended Petition, upon which he is proceeding. (Dkt. 18.)

## 2. Standard of Law

Rule 4 of the Rules Governing § 2254 Cases authorizes the Court to summarily dismiss a petition for writ of habeas corpus when "it plainly appears from the face of the petition and any attached exhibits that the petitioner is not entitled to relief in the district court." The Court may also take judicial notice of relevant state court records in determining whether to dismiss a petition. Fed. R. Evid. 201(b); *Dawson v Mahoney*, 451 F.3d 550, 551 (9th Cir. 2006). Where appropriate, a respondent is permitted to file a motion for summary dismissal, rather than an answer. *White v. Lewis*, 874 F.2d 599, 602 (9th Cir. 1989).

The Antiterrorism and Effective Death Penalty Act (AEDPA) requires a petitioner to seek federal habeas corpus relief within one year of several triggering events, the most

common being "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review." 28 U.S.C. § 2244(d)(1)(A); *Patterson v. Stewart*, 251 F.3d 1243, 1246 (9th Cir. 2001) (applying Federal Rule of Civil Procedure 6(a) to the AEDPA statute of limitations, which means that the calculation excludes the day the conviction became final, *e.g.*, a June 19, 1997 finality date yields a June 19, 1998 expiration date (equal to 366 days)).

Interpreting subsection § 2244(d)(1)(A), the Supreme Court of the United States has determined that the term "by the conclusion of direct review or the expiration of the time for seeking such review" is to be calculated "by reference to a uniform federal rule." *Clay v. United States*, 537 U.S. 522, 531 (2003). Even though a state rule may extend "finality" through the date an appellate court's mandate or remittitur is issued, that date is not the date of finality under the federal statute; rather, finality is measured from the date the order or judgment is issued. *Wixom v. Washington*, 264 F.3d 894, 897, 898 n.4 (9th Cir. 2001) ("a mandate is not a decision terminating review,'" rather, "the denial of his appeal is a decision terminating review").

Under the second prong of § 2244(d)(1)(A), "finality" is the "expiration of the time for seeking such review," which means that the judgment becomes final when the time for pursuing direct review at the next level of the state court system or in the United States Supreme Court expires, without petitioner having sought further review. *Id*. at 653-54.

The relevant time periods for the expiration of the time for seeking review are as follows. Idaho Appellate Rule 14 provides that an appeal from the district court must be

**MEMORANDUM DECISION AND ORDER - 4**

filed within 42 days from the date of an appealable order or judgment. Idaho Appellate Rule 118 provides that a petition for review to request that the Idaho Supreme Court review an opinion or order of the Court of Appeals must be filed within 21 days "after the announcement of the opinion or order, or after the announcement of an order denying rehearing, or after the announcement of an opinion on rehearing or after an opinion is modified without rehearing in a manner other than to correct a clerical error." United States Supreme Court Rule 13 provides that a petition for writ of certiorari must be filed with the United States Supreme Court within 90 days of a judgment entered by a state court of last resort. Hence, failure to file a notice of appeal, petition for review, or petition for writ of certiorari within the applicable time period triggers finality for purposes of § 2244(d)(1)(A).

AEDPA also contains a "tolling" provision that halts or suspends the running of the one-year limitation period during the time in "which a properly filed application for State postconviction or other collateral review with respect to the pertinent judgment or claim is pending."[1] 28 U.S.C. § 2244(d)(2). An application is "'properly filed' when its delivery and acceptance are in compliance with the applicable laws and rules governing filings," such as those that prescribe "the form of the document, the time limits upon its delivery, the court and office in which it must be lodged, and the requisite filing fee." *Artuz v.*

---

[1] A proper Rule 35 motion to reduce a sentence can be construed as a state collateral proceeding that stops the federal statute of limitations from running while the action is pending. *See Wall v. Kholi,* 131 S.Ct. 1278 (2011) (construing Rhode Island's Rule 35, which is similar to Idaho's rule).

**MEMORANDUM DECISION AND ORDER - 5**

*Bennett*, 531 U.S. 4, 8 (2000) (footnote omitted).

The one-year statute of limitation is tolled during "all of the time during which a state prisoner is attempting, through proper use of state court procedure, to exhaust state court remedies with regard to a particular post-conviction application." *Nino v. Galaza*, 183 F.3d 1003, 1006 (9th Cir. 1999), *abrogated on other grounds by Carey v. Safford*, 536 U.S. 214, 220, 225 (2002)). However, the federal statute of limitations is not tolled between the time a final decision is issued on direct appeal and the time the first collateral challenge is filed. *Thorson v. Palmer*, 479 F.3d 643, 646 (9th Cir. 2007).

A state collateral relief application is considered "pending" under § 2244(d)(2) until "the application has achieved final resolution through the State's post-conviction procedures." *Carey v. Saffold*, 536 U.S. at 220. Unlike the § 2244(d)(1) determination of "finality," whether an application remains "pending" under § 2244(d)(2) depends on the state's interpretation of finality. *See White v. Klitzkie*, 281 F.3d 920, 924 n.4 (9th Cir. 2002) (it is the state appellate court decision, not the mandate, that signals conclusion of review for § 2244(d)(2) purposes, unless (as in Idaho and California) the state has a rule that extends the time when the decision of the state appellate court becomes final).

The Idaho Court of Appeals has determined that decisions of the Idaho Supreme Court are final when the remittitur is issued. *See Jakoski v. State*, 32 P.3d 672, 679 (Idaho Ct. App. 2001). The United States Supreme Court has determined that the term "pending" does not include the time period for filing a petition for writ of certiorari before the United States Supreme Court. *Lawrence v. Florida*, 549 U.S. 327, 337 (2007). Therefore, in

**MEMORANDUM DECISION AND ORDER - 6**

Idaho, statutory tolling lasts until the state appellate court's remittitur is issued, at which point the case is no longer "pending," causing the remainder of the statute of limitations to begin running again at the same place it left off, rather than with a new 365-day time period.

Once a federal statute of limitations has expired, it cannot be reinstated or resurrected by a later-filed state court action. *See Ferguson v. Palmateer*, 321 F.3d 820, 822 (9th Cir. 2003) ("section 2244(d) does not permit the reinitiation of the limitations period that has ended before the state petition was filed"); *Green v. White*, 223 F.3d 1001, 1003 (9th Cir. 2000) (petitioner was not entitled to tolling for state petitions filed after federal time limitation has run).

3.  Discussion

    A.  *Statute Expiration*

Petitioner's judgment became final 90 days after the date the Idaho Supreme Court denied his petition for review. Ninety days after March 13, 2007, is June 11, 2007. Thus, the one-year federal habeas corpus statute of limitations began running on June 11, 2007, and was to expire on June 11, 2008 ("one year" or 366 days later under Rule 6(a)).

The federal statute of limitations was tolled on March 7, 2008, when Petitioner filed his first post-conviction petition, at which point 270 days of the statute of limitations had lapsed, and 96 days remained. The post-conviction action was dismissed by the state district court on July 26, 2010, and the order became final when the 42-day period for appeal expired on September 6, 2010. The statute of limitations ran for an additional 96

**MEMORANDUM DECISION AND ORDER - 7**

days, and expired on December 11, 2010. The notice of appeal of October 7, 2010, filed beyond the 42-day appeal period, did not toll the statute because it was untimely and thus not "properly filed." As a result, the statute continued running, expiring on December 11, 2010, nearly a year before the original federal Petition for Writ of Habeas Corpus in this action was filed on October 7, 2011.

Even if the Court allows Petitioner the benefit of tolling during the entire time period during which the post-conviction action was filing, including during the time period when the late-filed notice of appeal of the post-conviction dismissal was pending, from March 7, 2008, through December 11, 2010, the statute would have expired 96 days later, on March 17, 2011, seven months prior to Petitioner's federal filing.

Petitioner's successive state post-conviction action, filed on April 16, 2012, a date that was beyond the expiration of the statute of limitations deadline, did not serve to resurrect or re-start a limitations period that had already expired. In any event, because the successive petition was deemed untimely by the state court, it could not have tolled the statute of limitations, because it was not properly filed.

### B. *Equitable Tolling and Actual Innocence Exceptions*

#### (1) Standard of Law

If, after applying statutory tolling, a habeas corpus petition is deemed untimely, a federal court can hear the claims if the petitioner can establish that "equitable tolling" should be applied. In *Pace v. DiGuglielmo*, 544 U.S. 408 (2005), the Court clarified that,"[g]enerally, a litigant seeking equitable tolling bears the burden of establishing two

elements: (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstances stood in his way." *Id*. at 418. To qualify for equitable tolling, a circumstance must have *caused* Petitioner to be unable to file his federal petition in time. *Frye v. Hickman*, 273 F.3d 1144, 1146 (9th Cir. 2001) (circumstance must have "made it impossible to file a petition on time"). The petitioner bears the burden of bringing forward facts to establish a basis for equitable tolling. *United States v. Marolf*, 173 F.3d 1213, 1318, n. 3 (9th Cir. 1999).

The United States Supreme Court has determined that there is an "actual innocence" exception to the AEDPA statute of limitations, and that the exception applies where a petitioner meets the rigorous actual innocence standard of *Schlup v. Delo*, 513 U.S. 298 (1995). *McQuiggin v. Perkins*, 133 S.Ct. 1924, 1928 (2013). To make a showing of actual innocence under *Schlup*, a Petitioner must present new evidence showing that "'it is more likely than not that no reasonable juror would have convicted [the petitioner].'" *Perkins*, 133 S.Ct. at 1933 (quoting *Schlup*, 513 U.S. at 329).This exception is to be applied only in the "extraordinary" or "extremely rare" case. *House v. Bell*, 547 U.S. 518, 538 (2006); *Schlup*, 513 U.S. at 320-21.

In *Larsen v. Soto*, the United States Court of Appeals for the Ninth Circuit summarized the difference between those cases that meet the high actual innocence standard, and those that do not:

> The *Schlup* standard "is demanding," *Perkins*, 133 S.Ct. at 1936, and precedents holding that a habeas petitioner satisfied its strictures have typically involved dramatic new evidence of innocence. In *House*, for

instance, DNA evidence established that semen found on a murder victim came from the victim's husband and not from House, *see* 547 U.S. at 540–41, 126 S.Ct. 2064, and there was evidence that the husband had a history of violence toward his wife, raising an inference that he "could have been the murderer," *id*. at 548, 126 S.Ct. 2064. In *Carriger*, the prosecution's chief trial witness had confessed in open court that he himself (and not Carriger) had committed the murder for which Carriger had been convicted. *See* 132 F.3d at 471–72. In contrast, we have denied access to the *Schlup* gateway where a petitioner's evidence of innocence was merely cumulative or speculative or was insufficient to overcome otherwise convincing proof of guilt. *See, e.g., Lee v. Lampert*, 653 F.3d 929, 943–46 (9th Cir. 2011); *Sistrunk v. Armenakis*, 292 F.3d 669, 675–77 (9th Cir. 2002). Thus, to satisfy *Schlup*, the petitioner's new evidence must convincingly undermine the State's case. However, definitive, affirmative proof of innocence is not strictly required. As we explained in *Carriger*, a *Schlup* claim "is procedural, not substantive": a petitioner's new evidence must be sufficient to undermine a court's confidence in his conviction, but not to erase any possibility of guilt. 132 F.3d at 478.

742 F.3d 1083, 1095-96 (9th Cir. 2013).

The evidence supporting the actual innocence claim must be "newly presented" evidence of actual innocence, meaning that "it was not introduced to the jury at trial"; it need not be "newly discovered," meaning that it could have been available to the defendant during his trial. *Griffin v. Johnson*, 350 F.3d 956, 962–63 (9th Cir. 2013).

As to timing, "[u]nexplained delay in presenting new evidence bears on the determination whether the petitioner has made the requisite showing." *Perkins*, 133 S.Ct. at 1935. In other words, a petitioner's diligence should not be considered "discretely, but as part of the assessment whether actual innocence has been convincingly shown." *Id.*

   (2) <u>Discussion of Petitioner's Equitable Tolling Arguments</u>

Petitioner has made several arguments that seek to excuse the late filing of his

federal Petition for Writ of Habeas Corpus. Petitioner argues that he is entitled to equitable tolling for his counsel's failure to file a timely appeal from the state court's dismissal of the original state post-conviction petition. (Dkt. 27.) This argument fails because there is no causal connection between counsel's failure to file a notice of appeal in the *state* post-conviction case (causing the appeal of that case to be dismissed) and the failure of Petitioner to file his *federal* habeas corpus action in time. Even if there was a causal connection, it is clear that Petitioner's counsel was merely negligent, which does not serve as grounds for equitable tolling. *See Frye v. Hickman*, 273 F.3d at 1146 (miscalculation of the limitation period and ordinary negligence do not constitute extraordinary circumstances to warrant equitable tolling).

Because Petitioner is proceeding pro se in this matter, the Court has independently reviewed the record, and finds no other facts that would constitute grounds for equitable tolling. Nothing in the record shows that any outside influence beyond Petitioner's control caused an inability to file the federal petition in time. Petitioner waited long stretches of time in between filing state post-conviction matters, which doubled as long stretches of time when his federal statute of limitations was running, because both state and federal limitations periods are running simultaneously until a state petition is filed.

(3)  Discussion of Actual Innocence

Second, to the extent that Petitioner asserts that he is actually innocent, the Court concludes that he has not shown that it is more likely than not that no reasonable juror would have convicted him in the light of his newly-presented evidence, as the Court will

**MEMORANDUM DECISION AND ORDER - 11**

now explain.

Petitioner's theory at trial was mistaken identity—that someone else shot the victim, but on post-conviction review, Petitioner changed his theory to self-defense. At trial, the victim, backseat passenger Augustin Contreras, gave the following testimony. Petitioner Hector Avila was a front-seat passenger in a Kia Rio, driven by his brother Andres Avila. Petitioner became angry at Augustin, a long-time friend of the Avila brothers, because Augustin repeatedly told Andres and Petitioner (1) to take him home; (2) that he did not want to do drugs with them; and (3) that they could not leave a stolen truck at Augustin's house, because all of these things would jeopardize Augustin's parole. Augustin testified that the brothers called him a "pussy," and Petitioner complained to Andres that Andres "gave the green light" to other people, but never "gave [Petitioner] the green light," meaning that Andres authorized others, but not Petitioner, to kill someone. (*See* State's Lodging A-6.)

Augustin testified that Petitioner turned without any warning and shot him in the neck and hip. Augustin briefly passed out. After Augustin "woke up," he yelled and kicked at the brothers, and then shot back at Petitioner with a .22 pistol, missing him but shooting a hole through the front passenger window. Augustin testified that Petitioner and his brother would not take him to the hospital. After Augustin left the car, someone else took him to the hospital. (*See* State's Lodging A-6.)

Neither Petitioner nor Andres testified at trial. Petitioner's counsel argued mistaken identity, based on Augustin's first description of the incident to police—that Augustin was

**MEMORANDUM DECISION AND ORDER - 12**

hitchhiking, and the unknown person who picked him up had shot him. Petitioner and his counsel relied on this theory of defense because, had Petitioner testified, the State would have been entitled to put on other incriminating evidence, particularly, evidence showing that Petitioner had a history of being violent and aggressive. To counter the mistaken identity defense, the State presented evidence at trial to show that the Kia Rio had been damaged and had blood on the back seat, which showed that the incident had occurred in the Avila brothers' Kia Rio, rather than in an unknown car. Augustin testified at trial that the reason he had told the hitchhiking story was because he was afraid of the Avlia brothers. (See State's Lodging A-6.)

On post-conviction review, Petitioner claimed that his counsel had been ineffective because he neglected to call Petitioner's brother as a witness to show that Petitioner had shot Augustin in self-defense. However, the court and the prosecutor recalled how Petitioner's counsel crafted the entire case around the mistaken identity theory–which was inconsistent with a self-defense theory–and the court reasoned that Petitioner had to use one or the other, but not both theories at trial, as his counsel clearly understood.

Andres Avila's Affidavit tells a story that is different from the story Augustin told at trial. Andres states that the three men spent the day together looking for tires for Augustin's father, and then ended up using methamphetamine that Augustin had obtained from a source in Nampa. When they stopped for gas in Caldwell, Augustin had a pistol in his pocket, and Andres told Augustin not to go inside the store with the pistol. Augustin refused, and Andres told Petitioner to go into the store with Augustin to pay for the gas so

**MEMORANDUM DECISION AND ORDER - 13**

there would not be a problem. Augustin seemed nervous when he came outside, almost paranoid. As they began driving, Augustin shot his pistol toward Petitioner, and the bullet hit the passenger window with a crash. Andres noticed Petitioner slumped down in his seat, and so Andres slammed on the brakes. At that time, Petitioner reached under his seat to retrieve a gun, which he fired back at Augustin. Andres states that Augustin tried to fire again, but his gun jammed. (*See* State's Lodging, pp. 172-75.)

Andres declared that he told Augustin he would take him to the hospital, but Augustin exited the car and ran across a field. Andres then asked Petitioner if he was shot and needed to go to the hospital. One of the tires had gone flat from a bullet. When the brothers heard sirens, they fled the scene. (*Id.*, p. 175) Andres concluded: "I believe Hector [Petitioner] acted in self defense as the first shot was fired by Augustin and was aimed toward where Hector was seated." (*Id.*)

Andres's testimony is not so compelling as to overcome Augustin's contrary testimony about who shot whom first. The question boils down to one of credibility. Andres's testimony may have been judged to be biased in favor of his brother and himself, because he, too, was criminally charged as a result of the events of the evening. Simply providing a contrasting opinion, with no other "dramatic" newly-presented corroborating evidence, is not the type of evidence that supports an "actual innocence" claim under *Schlup*'s demanding standard.

Further, Andres and Petitioner did not come forward with their self-defense story first; instead, they ran from police officers, and Petitioner eventually was apprehended

**MEMORANDUM DECISION AND ORDER - 14**

while hiding in the crawl space of a house. (State's Lodging A-6, pp. 307-310.) These are not actions supporting their story that Petitioner was a victim, rather than a perpetrator.

The Court concludes that Petitioner has not shown that it is more likely than not that *no* reasonable juror would have convicted him in light of all of the evidence, including Andres' version of events. Petitioner has not produced evidence that convincingly undermines the State's evidence. Therefore, he cannot use actual innocence to defeat the statute of limitations bar.

(4) <u>Discussion of Petitioner's Procedural Default Arguments</u>

Finally, Petitioner argues that his claims are not procedurally default or that their procedural default should be excused. Respondents have not asserted procedural default as a ground for dismissal of the claims in the Petition. Before one can argue that a procedural default should be excused, one must make a threshold showing that the petition was timely filed. Petitioner should also be aware that *Martinez v. Ryan*, 132 S.Ct. 1309 (2012), applies only to a procedural default defense, not to a statute of limitations defense.

**4.     Conclusion**

The Court concludes that the original Petition in this matter was filed beyond the statute of limitations, and that equitable tolling is not applicable to permit the Court to hear the merits of the claims. Neither does the record show that the actual innocence exception should be applied. Accordingly, the Amended Petition, and this entire action, will be dismissed with prejudice.

**ORDER**

**IT IS ORDERED:**

1. Respondent's Motion for Extension of Time (Dkt. 20) is GRANTED. The Motion for Summary Dismissal (Dkt. 21) is considered timely filed.

2. Respondent's Motion for Summary Dismissal (Dkt. 21) is GRANTED.

3. The Amended Petition (Dkt. 18), and this entire action, are DISMISSED with prejudice.

4. The Court does not find its resolution of this habeas matter to be reasonably

**MEMORANDUM DECISION AND ORDER - 16**

debatable, and a certificate of appealability will not issue. *See* 28 U.S.C. § 2253(c); Rule 11 of the Rules Governing Section 2254 Cases. If Petitioner files a timely notice of appeal, the Clerk of Court shall forward a copy of the notice of appeal, together with this Order, to the United States Court of Appeals for the Ninth Circuit. Petitioner may seek a certificate of appealability from the Ninth Circuit by filing a request in that court.

DATED: **August 20, 2014**

*signature*

~~Honorab~~le Edward J. Lodge
U. S. District Judge

**MEMORANDUM DECISION AND ORDER - 17**